1  MARC J. FAGEL (Cal. Bar No. 154425)
   CARY S. ROBNETT (Cal. Bar No. 160585)
2  TRACY L. DAVIS (Cal. Bar No. 184129)
      DavisTL@sec.gov
3  STEVEN D. BUCHHOLZ (Cal. Bar No. 202638)
      BuchholzS@sec.gov
4
   Attorneys for Plaintiff
5  SECURITIES AND EXCHANGE COMMISSION
   44 Montgomery Street, Suite 2600
6  San Francisco, California 94104
   Telephone: 415-705-2500
7  Facsimile: 415-705-2501

E-filing

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | Case No. CV 08 2262 |
| Plaintiff, | |
| vs. | COMPLAINT |
| HONG LIANG LU and MICHAEL J. SOPHIE, | PJH |
| Defendants. | |

Plaintiff Securities and Exchange Commission (the "Commission") alleges against defendants Hong Liang Lu ("Lu") and Michael J. Sophie ("Sophie") ("Defendants"):

**SUMMARY OF THE ACTION**

1.   Lu, the Chief Executive Officer of UTStarcom, Inc. ("UTSI" or "the company"), and Sophie, UTSI's former Chief Financial Officer, certified, pursuant to Section 302 of the Sarbanes-Oxley Act, the accuracy and completeness of UTSI's quarterly and annual reports filed with the SEC. UTSI's reports were not accurate and complete, however. Between 2000 and 2006, telecommunications company UTSI improperly recognized revenue on transactions subject to undisclosed side agreements, failed to properly disclose and account for related party transactions, and failed to properly record compensation expenses related to employee stock

COMPLAINT

options. Despite being put on notice of potential accounting issues by, among other things, material weakness letters sent by the company's outside auditor, Defendants falsely certified that UTSI's quarterly and annual reports did not contain any material misstatements or omissions, disclosed all significant deficiencies in UTSI's internal controls, and fairly presented UTSI's financial condition and results of operations.

2. In a separate administrative proceeding relating to these violations, the Commission has issued an order directing Lu and Sophie to cease and desist from committing or causing any violations or future violations of certain provisions of the federal securities laws.

3. In this action, the Commission seeks a Court order requiring Defendants to pay civil monetary penalties for violating Rule 13a-14 of the Securities Exchange Act of 1934 ("Exchange Act") based on the same facts and circumstances.

**JURISDICTION AND VENUE**

4. The Commission brings this action pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

5. This Court has jurisdiction over this action pursuant to Sections 21(d)(3) and 27 of the Exchange Act [15 U.S.C. §§ 78u(d)(3) and 78aa].

6. Venue in this District is proper pursuant to Section 27 of the Exchange Act [15 U.S.C. § 78aa] because Defendants reside and transact business within the Northern District of California.

7. Intradistrict assignment to the San Francisco Division is proper pursuant to Civil L.R. 3-2(c) because a substantial part of the events or omissions that give rise to this action occurred in the County of Alameda.

**DEFENDANTS**

8. Hong Liang Lu, 53, is a co-founder of UTSI and has served as a board member and Chief Executive Officer since 1995. Lu resides in San Ramon, California and Hangzhou, China.

9.   Michael J. Sophie, 50, was UTSI's Chief Financial Officer from 2000 through August 2005 and UTSI's Chief Operating Officer from June 2005 through May 2006. Sophie resides in Pleasanton, California.

### RELEVANT ENTITY

10.   UTStarcom, Inc., a Delaware corporation with headquarters in Alameda, California, is a telecommunications company that sells software and hardware products in emerging and established telecommunications markets around the world. The majority of UTSI's operations are in Hangzhou, China and overseas. UTSI went public in 2000, and its common stock is registered with the Commission pursuant to Section 12(b) of the Exchange Act and trades on the NASDAQ Global Select Market under the symbol UTSI.

### STATEMENT OF FACTS

11.   Historically, China has been UTSI's largest market. Between 1995 and 2002, nearly all of UTSI's revenue derived from sales by UTSI's subsidiary in China ("UT-China"). By late 2002, UTSI's business plan was expanded to include growth on an international scale. UTSI defines "international" sales as all sales outside of China, including sales in the U.S., Japan, India, and other overseas markets. In 2003 and 2004, sales in China accounted for 86% and 79% of UTSI's revenue, respectively. By 2006, sales in China accounted for 32% of UTSI's revenue. The finance department at UT-China handled the accounting for all transactions in China, and UTSI's finance department in the U.S. handled the accounting for all international transactions.

12.   In March 2003, UTSI received a Management Recommendation letter from its auditor detailing internal control weaknesses identified during the December 31, 2002 year-end audit. The letter was addressed to the audit committee and copied to Lu and Sophie. Among other things, the letter specifically noted that UTSI should "strengthen procedures to ensure side letters and contract amendments are communicated and accounted for in a timely manner." In its written response to the auditor's letter, UTSI said it had implemented the necessary controls to track and monitor side letters and non-routine transactions. UTSI sometimes used letter

1 agreements, or side letters, to supplement or amend contractual terms. Such letters were allowed
2 so long as the accounting for them was done properly.

3     13. UTSI received another Management Recommendation letter from its auditor in
4 April 2004 detailing multiple internal control weaknesses (many classified as material) identified
5 during the December 31, 2003 year-end audit. The letter was copied to Lu and Sophie, and again
6 noted concerns about the use of side letters that were not forwarded to the finance department.
7 The auditor also expressed concerns with many complex related-party transactions entered into
8 by UTSI. The auditor informed UTSI that the company did not adequately disclose significant
9 transactions involving joint venture arrangements between UTSI and its customers. In its written
10 response, UTSI said it had strengthened controls to identify side letters and implemented
11 monitoring procedures to identify significant joint venture transactions.

12 **A.   UTSI Prematurely Recognized Revenue From International Sales Subject To Undisclosed Side Agreements**
13

14     14. Between 2003 and 2005, UTSI prematurely recognized nearly $50 million in net
15 revenue from international sales, all of which occurred outside the U.S., which were subject to
16 side agreements that had been concealed from the company's finance personnel. Because these
17 agreements promised future performance by UTSI, revenue should not have been recognized
18 under Generally Accepted Accounting Principles ("GAAP").

19     15. Among other contingent transactions, UTSI improperly recognized revenue from
20 the sale of a $22 million network system to a purchaser in India. At the time of the sale,
21 securities analysts had expressed concerns about UTSI's ability to enter markets outside China,
22 and Lu specifically highlighted this deal as indicative of UTSI's success in gaining traction in
23 India.

24     16. UTSI delivered the system and recognized revenue from the $22 million sale in
25 phases over several quarters, including the second quarter of 2004 and the second quarter of
26 2005. Before recognizing the revenue, UTSI's finance department required the purchaser to sign
27 a final acceptance certificate certifying that all elements of the phase had been delivered and
28 successfully installed.

17. During the second quarter of 2004, the purchaser sent UTSI the final acceptance certificate, but included a proposed side agreement requiring UTSI to upgrade the system after the end of the quarter. Lu and Sophie were aware of the proposed side agreement. UTSI's revenue recognition manager, with the knowledge of Lu and Sophie, specifically admonished that approving the side agreement would prevent revenue recognition. Lu personally communicated with the customer to request that they accept the products without a side agreement.

18. Notwithstanding the admonition, a UTSI sales executive signed a side agreement with the purchaser, but failed to adequately disclose the agreement to finance personnel, resulting in the improper recognition of revenue by the company. Lu and Sophie failed to take adequate steps to determine how the customer's request for a side agreement had been resolved and whether revenue recognition was appropriate.

19. During the second quarter of 2005, UTSI recognized additional revenue from the India sale. Once again, a UTSI sales executive had signed a side letter making the customer's acceptance contingent on future upgrades (and thus rendering revenue recognition improper under GAAP). Lu and Sophie were aware the customer had made such a request, but received a communication from finance personnel that the final acceptance certificates received from the customer were acceptable. Neither Lu nor Sophie took steps to determine how the issue was resolved and whether revenue was properly recognized.

20. In addition to the India transaction, UTSI entered into five other international sales transactions totaling $27.5 million in net revenue where side agreements had been entered into promising future products or services. These side agreements should have precluded revenue recognition. On June 26, 2006, UTSI restated its financial statements for the period between Q1 2003 through Q3 2005, reversing $49.5 million in net revenue that had been improperly recognized by the company.

**B.     UTSI Prematurely Recognized Revenue On Sales In China With Undisclosed Contract Modifications**

21.     Between 2000 and 2005, UTSI prematurely recognized over $350 million in revenue from 78 sales transactions in China. On some occasions, UTSI sales personnel entered into contracts that contained non-standard product upgrade provisions precluding revenue recognition. In some instances, sales personnel documented the sales on two separate contracts, and only the company's standard contract (without the upgrade provisions) was made available to UTSI's finance personnel. As a result, UTSI repeatedly recognized revenue for contingent sales in violation of GAAP.

22.     Lu and Sophie had been on notice since at least 2003 of significant internal control weaknesses in China, including the fact that in some instances side letters and contract amendments introducing revenue contingencies were not forwarded by sales offices to the contract and finance departments. Although Lu and Sophie took steps to improve internal controls in response to this information, neither those steps nor the resulting controls were sufficient to detect the improper dual contract practices and failed to prevent certain improprieties.

23.     On October 10, 2007, UTSI restated its financial statements from 2000 through the second quarter of 2006 to reverse $271 million in net revenue improperly recognized by the company.

**C.     UTSI Failed to Disclose and Properly Account for Related Party Transactions**

24.     In 2001, a China-based company called MDC was formed in order to provide value-added services to UTSI products. The father of UT-China's Executive Vice President founded MDC; the UT-China executive served as the "alternate" chairman of MDC's board of directors. Numerous officers and other employees of UT-China invested in MDC, and certain UT-China employees worked for MDC while their salaries were paid by UT-China.

25.     In 2003, UT-China entered into a complex transaction involving MDC and another customer in China, whereby MDC took ownership of UTSI inventory that had decreased

in value. Because UTSI failed properly to treat MDC as a consolidated entity, no impairment of the inventory value was recorded by UTSI at the time.

26. Lu and Sophie had been on notice of concerns raised by the company's auditor about UTSI's failure to adequately disclose related party transactions entered into by UTSI. Although Lu and Sophie took steps to improve internal controls in response to this information, neither those steps nor the resulting controls were sufficient to detect the improper transaction with MDC and failed to prevent inaccurate reporting of certain related party transactions.

27. On April 13, 2005, UTSI restated its 2003 financial statements in part to consolidate MDC, as MDC was deemed a related party controlled by UTSI. The restatement resulted in the write down of $7.5 million in UTSI inventory held by MDC.

**D.    UTSI Failed Properly to Account for Stock Compensation Expenses**

28. UTSI failed properly to account for certain stock option grants because the company used incorrect grant dates for determining compensation expenses. Under GAAP, UTSI was required to record an expense on its financial statements for any stock options granted "in-the-money" – i.e. where the exercise price of the option was less than the market price for the security on the date the option was granted.

29. Certain grants to UTSI officers were backdated or accounted for with incorrect grant dates prior to the proper authorization of the grant by the company's Compensation Committee. This resulted in an exercise price below market price on the date of the grant, yet no expense was recorded by the company.

30. UTSI failed to establish and implement adequate internal controls for the granting of employee stock options. Among other things, UTSI failed to maintain necessary documentation showing when the grants were actually authorized by the Compensation Committee.

31. On October 10, 2007, UTSI restated its financial statements from 1998 through the second quarter of 2006 to recognize an additional $27 million in compensation expenses related to employee stock options.

### E. Defendants Signed False Certifications Under Section 302 of the Sarbanes-Oxley Act

32. Lu and Sophie, as UTSI's CEO and CFO, were required to sign certifications each fiscal quarter and fiscal year stating that, based on their knowledge, the company's quarterly and annual reports did not contain any misstatements or omit material information, that the reports disclosed all significant deficiencies in the design or operation of UTSI's internal controls, and that the reports fairly presented in all material respects UTSI's financial condition and results of operations. Lu executed such certifications for the quarters and years from the first quarter of 2004 through the second quarter of 2006, and Sophie executed such certifications for the quarters and years from the first quarter of 2004 through the second quarter of 2005. For the reasons set forth above, these certifications were false.

## CLAIM FOR RELIEF

Violations of Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14]

33. Paragraphs 1 through 21 are re-alleged and incorporated herein by reference.

34. Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14] requires quarterly and annual reports on Forms 10-Q and 10-K to include certifications of the issuer's principal executive and principal financial officers in the form set forth under Section 302 of the Sarbanes-Oxley Act [15 U.S.C. § 7241].

35. By falsely certifying that UTSI's quarterly and annual reports did not contain any material misstatements or omissions, disclosed all significant deficiencies in UTSI's internal controls, and fairly presented UTSI's financial condition and results of operations, Defendants violated Rule 13a-14 of the Exchange Act [17 C.F.R. § 240.13a-14].

**PRAYER FOR RELIEF**

WHEREFORE, the Commission respectfully requests that the Court enter a Final Judgment ordering Defendants to pay civil monetary penalties pursuant to Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)] and granting such other relief as the Court deems appropriate.

Dated: May 1, 2008

Respectfully submitted,

_____
Marc J. Fagel
Cary S. Robnett
Tracy L. Davis
Steven D. Buchholz
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION

E-filing ORIGINAL

JS 44 (Rev. 12/07) (cand rev 1-16-08)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON PAGE TWO OF THE FORM.)

## I. (a) PLAINTIFFS
Securities and Exchange Commission

## DEFENDANTS
Hong Liang Lu and Michael J. Sophie

**(b)** County of Residence of First Listed Plaintiff  San Francisco
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant  Contra Costa County
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

Securities and Exchange Commission
44 Montgomery Street, Suite 2600
San Francisco, CA 94104
(415) 705-2500

Attorneys (If Known)

Boris Feldman, Esq.
Wilson Sonsini Goodrich & Rosati P.C.
650 Page Mill Road
Palo Alto, CA 94304

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

[X] 1 U.S. Government Plaintiff
[ ] 2 U.S. Government Defendant
[ ] 3 Federal Question (U.S. Government Not a Party)
[ ] 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant) (For Diversity Cases Only)

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated or Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated and Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| [ ] 110 Insurance | PERSONAL INJURY | PERSONAL INJURY | [ ] 610 Agriculture | [ ] 422 Appeal 28 USC 158 | [ ] 400 State Reapportionment |
| [ ] 120 Marine | [ ] 310 Airplane | [ ] 362 Personal Injury— Med. Malpractice | [ ] 620 Other Food & Drug | [ ] 423 Withdrawal 28 USC 157 | [ ] 410 Antitrust |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability | [ ] 365 Personal Injury — Product Liability | [ ] 625 Drug Related Seizure of Property 21 USC 881 |  | [ ] 430 Banks and Banking |
| [ ] 140 Negotiable Instrument |  |  | [ ] 630 Liquor Laws | **PROPERTY RIGHTS** | [ ] 450 Commerce |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment | [ ] 320 Assault, Libel & Slander | [ ] 368 Asbestos Personal Injury Product Liability | [ ] 640 R.R. & Truck | [ ] 820 Copyrights | [ ] 460 Deportation |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers' Liability |  | [ ] 650 Airline Regs. | [ ] 830 Patent | [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 152 Recovery of Defaulted Student Loans (Excl. Veterans) | [ ] 340 Marine | PERSONAL PROPERTY | [ ] 660 Occupational Safety/Health | [ ] 840 Trademark | [ ] 480 Consumer Credit |
|  | [ ] 345 Marine Product Liability | [ ] 370 Other Fraud | [ ] 690 Other |  | [ ] 490 Cable/Sat TV |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits |  | [ ] 371 Truth in Lending | **LABOR** | **SOCIAL SECURITY** | [ ] 810 Selective Service |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle | [ ] 380 Other Personal Property Damage | [ ] 710 Fair Labor Standards Act | [ ] 861 HIA (1395ff) | [X] 850 Securities/Commodities/ Exchange |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle Product Liability | [ ] 385 Property Damage Product Liability | [ ] 720 Labor/Mgmt. Relations | [ ] 862 Black Lung (923) | [ ] 875 Customer Challenge 12 USC 3410 |
| [ ] 195 Contract Product Liability | [ ] 360 Other Personal Injury |  | [ ] 730 Labor/Mgmt.Reporting & Disclosure Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| [ ] 196 Franchise |  | **PRISONER PETITIONS** | [ ] 740 Railway Labor Act | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | [ ] 510 Motions to Vacate Sentence Habeas Corpus: | [ ] 790 Other Labor Litigation | [ ] 865 RSI (405(g)) | [ ] 892 Economic Stabilization Act |
| [ ] 210 Land Condemnation | [ ] 441 Voting |  | [ ] 791 Empl. Ret. Inc. Security Act |  | [ ] 893 Environmental Matters |
| [ ] 220 Foreclosure | [ ] 442 Employment |  |  | **FEDERAL TAX SUITS** | [ ] 894 Energy Allocation Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 443 Housing/ Accommodations | [ ] 530 General |  | [ ] 870 Taxes (U.S. Plaintiff or Defendant) | [ ] 895 Freedom of Information Act |
| [ ] 240 Torts to Land |  | [ ] 535 Death Penalty |  |  | [ ] 900 Appeal of Fee Determination Under Equal Access to Justice |
| [ ] 245 Tort Product Liability | [ ] 444 Welfare | [ ] 540 Mandamus & Other | **IMMIGRATION** | [ ] 871 IRS—Third Party 26 USC 7609 |  |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities - Employment | [ ] 550 Civil Rights | [ ] 462 Naturalization Application |  | [ ] 950 Constitutionality of State Statutes |
|  | [ ] 446 Amer. w/Disabilities – Other | [ ] 555 Prison Condition | [ ] 463 Habeas Corpus – Alien Detainee |  |  |
|  | [ ] 440 Other Civil Rights |  | [ ] 465 Other Immigration Actions |  |  |

## V. ORIGIN (Place an "X" in One Box Only)

[X] 1 Original Proceeding
[ ] 2 Removed from State Court
[ ] 3 Remanded from Appellate Court
[ ] 4 Reinstated or Reopened
[ ] 5 Transferred from another district (specify)
[ ] 6 Multidistrict Litigation
[ ] 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
[17 C.F.R. § 240.13a-14] and [15 U.S.C. § 7241]
Brief description of cause:
False officer certifications in public financial filings.

## VII. REQUESTED IN COMPLAINT:
[ ] CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $
CHECK YES only if demanded in complaint:
JURY DEMAND: [ ] Yes [X] No

## VIII. RELATED CASE(S) IF ANY
PLEASE REFER TO CIVIL L.R. 3-12 CONCERNING REQUIREMENT TO FILE "NOTICE OF RELATED CASE".

## IX. DIVISIONAL ASSIGNMENT (CIVIL L.R. 3-2) (PLACE AND "X" IN ONE BOX ONLY)
[X] SAN FRANCISCO/OAKLAND
[ ] SAN JOSE

DATE 5/1/08
SIGNATURE OF ATTORNEY OF RECORD